## Mary White v. Colin Campbell and others.

*Statute of limitations: Account stated.* In an action for goods sold and delivered, where the benefit of the statute of limitations is claimed as a defense to a portion of the amount claimed, on the ground that it has been converted into an account stated, through the assent of the defendant to the account as rendered to him, it is not sufficient to sustain such defense, that upon, and after, the exhibition of the account to him he remained perfectly passive, but he must show some word or act, marking or implying that he assented to the account.

*Res judicata.* Where a case goes twice to a court of review, and a point decided upon the first hearing, is raised on the second, the decision upon the question at the first hearing, is not conclusive at the second, where the record of the second trial contains evidence of additional facts relating thereto, upon which the record of the first trial was silent.

*Charge to the jury: Requests to charge: Objections.* Where the evidence relating to a subject is not inconsistent with either of two distinct hypotheses, one favoring one party, and one the other, and the court at the request of one party, charged agreeably to one of such hypotheses, and the verdict was such that it is to be presumed that the jury found such hypothesis to be the true one, the judgment will not be reversed by a court of review, for want of an instruction adapted to the other hypothesis, in the absence of any request so to charge.

*Credit: Article purchased and returned: Mutual account.* A credit, in an account for goods sold and delivered from time to time, for the value of an article returned, if such article had been first purchased for cash, and then returned and accepted, and the vendor, by mutual consent, express or implied, was allowed to retain the purchase price, whether considered as a credit for the money paid, or for the same sum treated as the price of the article

returned, upon a resale thereof, is a proper item on the credit side of such account, and sufficient to convert the account into a mutual one; but if such article was received in the first place without payment, and was afterwards returned, and this was done for mutual accommodation and convenience, and not by way of barter or trade, the matter thus consummated, becomes a single transaction which terminated without giving the right to either side to make it the matter of account, within the intent of the statute of limitations.

*Statute of limitations: Absences: Burden of proof.* Where a defendant claims the benefit of the statute of limitations, and it appears that he had removed his residence to a foreign country, and had afterwards returned, the burden of proving that the sum of the times of his presence within the jurisdiction, was sufficient to satisfy the statute, is upon him; he is the party who substantially asserts the affirmative of the issue.

*Bill of exceptions: Extending time to settle: Discretion.* Where a circuit judge has once regularly extended the time to settle a bill of exceptions into a term subsequent to that at which the judgment was rendered, he may, at his discretion, settle the same at any time thereafter.

*Heard July 8. Decided October 15.*

Error to Wayne Circuit.

*C. A. Kent,* for defendants in error, moved to strike the bill of exceptions from the record, and cited: *Cleveland v. Stein, 14 Mich., 334.*

*D. B. & H. M. Duffield, contra,* cited: *Comp. L., 1857,* § *4405; Circuit Court Rules Nos. 85, 86; People v. Littlejohn, 11 Mich., 60.*

It appeared that judgment was rendered April 19, 1871, during the March term; that the time to settle a bill of exceptions in the case, was regularly extended by orders, from time to time, until about July 1, 1871, into the May term; that from that time until February 5, 1872, no order to extend the time was granted, but that, on that day, an order was entered upon an *ex parte* application of plaintiff in error, extending the time ten days; that within those ten days the bill of exceptions was settled, and signed by the circuit judge; and that the same was filed on the 13th day of February, 1872, but that the settlement thereof was

against the objection of defendants in error, that the judge had no power to settle the same at that late day.

THE COURT held that the circuit judge, having once regularly extended the time for settling the bill of exceptions, into a term subsequent to that at which the judgment was rendered, he had full authority to settle the same at any time thereafter, at his discretion.

The facts are sufficiently stated in the opinion. The charge, referred to in the opinion, upon the first subject discussed, was given in response to the plaintiffs' request to charge that, "if the jury find, from the evidence, that the items charged to the defendant, in 1860 and 1861, never were settled, or the amount agreed upon between the parties, until the items charged in 1865 and 1866, the whole constituted one open account current, within the meaning of the statute of limitations," and was as follows:

"That is, perhaps, substantially true, but it is not necessary that the parties should agree in writing, that the account was settled; but it is for you to determine what the facts were in connection with this running account. Now, if on the first of October, when Campbell swears that he forbid any further credit being given, or something of that kind—you will recollect the testimony—and the account was then made out and delivered to her, or given to her in some way, if that was admitted, by all the parties concerned, to be an end of the account, and it was then closed up, then, of course, that account would be closed; and if you believe that he delivered the bill to her of these items, and she made no complaint for five or six years—this was in 1861, and nothing more was done with the account until 1865, she receiving the account and accepting it—then that would be very strong evidence for

25 MICH.—59.

you to take into account, whether they did not, both of them, understand that that was the account between them, and that it there closed, and the account was settled between them, so far as the amounts, and items, etc., were concerned. Now, if you shall find, that at the time this account was delivered, the parties understood that was the end of the account, and if, at that time, instead of the end of the six months, the amount then became due, that would be a settlement of that account. If you also find that she moved away not until the 15th of November, six years thereafter, the amount of the first bill would be outlawed; and if you find those facts, the plaintiff could not recover for the first bill. So far as that question is concerned, of course, you must take into account the facts of the account being presented at that time—Campbell swearing, I think, that he told her she could have no more goods."

The defendant's requests upon this point, which were refused, were:—

"1. That the account sued on is not a mutual and open account, within the meaning of the statute of limitations, and plaintiffs can only recover for such items as appear to have been sold within six years before suit was begun, or some disability to sue occurred.

"3. That under the testimony of plaintiffs themselves, the first account became due and was rendered October 1st, 1861, and the statute began to run from that time without waiting any credit."

*D. B. & H. M. Duffield*, for plaintiff in error.

*Walker & Kent*, for defendants in error.

GRAVES, J.

This was an action for goods sold and delivered. The

defense was the statute of limitations. The plaintiff recovered, and the defendant, Mrs. White, has brought error.

The first question relates to a series of items in account, charged between July, 1860, and November, 1861, which, it is claimed, were resolved into a stated account, before the subsequent dealing, and left to the operation of the statute.

In reference to this the plaintiffs gave evidence conducing to show that Mrs. White agreed that the goods she purchased, should be charged to, and paid for, by her; that she should have a credit on such goods until the end of each period of six months, during which they should be purchased; that between July, 1860, and November, 1861, they sold her goods to an amount exceeding seven hundred dollars, of which an amount of about two hundred dollars, were sold between July 1 and November 1st, 1861; that the goods were charged to her in their books; that she repeatedly promised payment, but neglected to make it; that in October, 1861, the credit was stopped by them, a bill rendered to her, and further credit refused; that no more goods were sold to her, on credit, until September, 1865; that between that time and August, 1866, she purchased other goods, on credit, to an amount of about seventy-five dollars; that these last articles were not regularly sold to her, but purchased of the clerks, contrary to order, and charged in certain account books of the plaintiffs below, and not set down in the regular day-book or blotter; that separate bills were rendered for the last series of items, and not referring to the old account; that the bills were made out separately, because Mrs. White had *declined* paying for the first mentioned goods, and defendants in error hoped that, by presenting separate bills, payment might be obtained.

The evidence for Mrs. White, on this subject, tended to show that she never promised to pay for the goods, and

that no credit was ever agreed upon, or promised to her.

Upon this evidence Mrs. White could not rightly require that the jury should be peremptorily instructed, that the first account had been settled, or had ceased to be an open one, in the sense in which the phrase "open account," is used in the statute. If the account had ceased to be an open one, it must have been because the circumstances had converted it into an account stated. There is no suggestion that the balance had been adjusted in any way, and consequently, the account could not have been settled.

The conversion of an open account into an account stated, is an operation by which the parties *assent* to a sum as the correct balance due from one to the other; and whether this operation has been performed or not, in any instance, must depend upon the facts. That it has taken place, may appear by evidence of an express understanding, or of words and acts, and the necessary and proper inferences from them. When accomplished, it does not necessarily exclude all inquiry into the rectitude of the account. The parties may still impeach it for fraud or mistake. But so long as it is not impeached, the agreed statement serves in place of the original account, as the foundation of an action. It becomes an original demand, and amounts to an *express* promise to pay the actual sum stated. The creditor becomes entitled to recover the agreed balance, in an action based on the fact of its acknowledgment by the debtor, upon an adjustment of their respective claims.— *Ashley v. Hill, 6 Conn., 246.* The effect of the operation is said to be much the same as though the debtor had given his note for the balance.—*Bass v. Bass, 8 Pick., 187.*

Bearing in mind the nature of the operation, and its effect upon the account, and on the rights of the parties, the proposition is plain, that a mere rendering of an

account, or a cessation of it by the death of one of the parties, or a bare discontinuance of the dealings, will not make the account a stated one.—*Bass v. Bass, 8 Pick., 187 ; Mandeville v. Wilson, 5 Cranch, 15 ; Toland v. Sprague, 12 Pet., 330-334.* Such circumstances afford no evidence of any mutual understanding by the parties of the truth of the account, or the agreement upon a sum to stand as a balance.

The position of the counsel for Mrs. White is, that, by the presentation of the first account to her, and subsequent silence and inaction by her in respect to it, that account became a stated one through her acquiescence, and therefore so closed as to sustain her defense to it under the statute It has long been held that, as against a party receiving an account, and not objecting to it within a reasonable time, its correctness may be considered as admitted by him, and the balance as the debt; or, in other words, that the party rendering the account may, under such circumstances, treat it as an account stated.—*Lockwood v. Thorne, 1 Kernan, 170, S. C., 18 N. Y., 290,* and authorities cited. But in such cases, as the assent of the party to whom the account is presented, or sent, is an indispensable requisite, and, as such assent is to be inferred from non-objection, it should appear in some way, before implying an assent, that the account has not been objected to. If the party to whom the account is rendered, object within a reasonable time, there is no room for inferring an admission of its correctness.

The evidence for defendants in error tended to show, that the first account was rendered before the expiration of the six months' credit, and that Mrs. White actually *declined* to pay it; and the evidence on her part also tended to show, that she never *promised* payment. But there is no evidence in the record, whether she objected or did not object to the account as a correct and proper one against

her, except in this form, unless the want of testimony on the subject is to be taken as equivalent to evidence in her favor of non-objection. And this, it seems to me, is not admissible. Her position, when the statement of it is so varied as to show what it definitely signifies, is, that she agreed that the first account, rendered to her before the time of credit had expired, was, as against her, a correct one, and that she promised to pay the balance which it showed. But the evidence on one side, that she declined paying, and on the other, that she never promised payment, strongly, I think, impugns this position.

The use now sought to be made of the doctrine of acquiescence, will admit, if it does not require, a few words on the subject. The cases where acquiescence has been deemed to amount to proof, or admission, of assent, have been cases where the parties insisting that assent was established by acquiescence, were not those to be inculpated by the admission, not those who were the unobjecting recipients of the accounts, but the parties who rendered or presented the accounts. The inference of assent from mere passiveness, has always been made against the passive party, and never in favor of that party as against the other.

The rule itself is said to have been founded, originally, on the *practice* of merchants (*Sherman v. Sherman, 2 Vernon, 276*); and in Lord Hardwick's time it was stated to be a *rule* among *merchants*, and in *equity* (*Tickel v Short, 2 Ves. sen'r, 239*); and, recently, in speaking of an account stated as the consequence of acquiescence, Mr· Justice Selden stated, very positively, that an account stated was not an estoppel, but a " mere admission that the account is correct."—*Lockwood v. Thorne, 18 N. Y., 285* Considering the origin and nature of the rule, I think a person who has chosen to hold an equivocal position in such a case, is not at liberty to assert the rights which per-

tain to a definite and decided one.    He ought not to be
allowed, at his election, to turn his own considerate inaction
and reticence into a positive admission in his own favor, to
serve as the very basis of his defense under the statute.

When he claims the benefit of the statute on the ground
that the account sued on has been converted into a stated
one, through his assent to it as rendered to him, it is not
enough to substantiate the defense, that there is no evidence
as to whether he objected or not, nor is it sufficient to
sustain such a defense, to prove, that upon, and after, the
exhibition of the account, he remained perfectly passive.
He must go further.    He must show some word, or act,
marking or implying that he assented to the account.    There
is no hardship in this.    If the party receiving the account
is willing to consider it as correct, and means that it shall
be so regarded on his side, so that he may be enabled to
assert the fact as against the other party, it will be easy
for him to manifest his assent in some positive and une-
quivocal manner.    Any other rule would lead to much
duplicity and injustice.    On this branch of the case, I
think the refusal of the request on the part of Mrs. White
was correct, and that the charge given was more favorable
to her than the facts really warranted.

The second question relates to the mutuality of the
account, and is confined to a single transaction.    When the
case was before the court on a former occasion, the bill of
exceptions stated, that there were certain items on the credit
side of the account, and, among them, one in 1866, for a
bonnet returned, and that no charge for a bonnet sold,
appeared in the account of a date earlier than the entry of
the return.    We are not aware whether evidence was given
on the first trial to elucidate this matter, but if there was,
it was not set forth.    In passing upon the questions then

in controversy, and having reference, of course, to the state
of the record, it was stated, that the credit items, as they
were called, in the bill of exceptions, were not such matters
of account as, when taken with the debit items, would con-
stitute a mutual account within the meaning of the statute.
This opinion was grounded upon the naked statement in
the bill of exceptions before mentioned, and resulted from
the construction put upon that statement. The transac-
tion to which the entry referred, was one which permitted
evidence in explanation, and a question of fact for the jury,
as to its true nature, would have been presented by the
introduction of such evidence. And their estimate of the
evidence could not have been reviewed in this court, even
if considered wholly unsatisfactory. But, as already inti-
mated, the record in no manner indicated that explanatory
evidence had been produced.

The case is now quite different. On the last trial it
appears that this subject was very fully investigated before
the jury, and the details are given by the record. The
point does not rest now upon a statement in the record,
that the account contained a single entry, and which
would require it to be taken in one or another sense, as it
should be explained, or stand without explanation. The
surrounding circumstances were all given. The witness
who made the entry testified, and her evidence, and her
explanations, were submitted to the jury. She made a very
full statement as to the manner in which business was done,
and accounts kept. This evidence is given at large in the
bill of exceptions, and it cannot be successfully contended,
that it sheds no new or additional light upon the transac-
tion concerning the bonnet. It raised a proper question
for the jury, and whatever opinion we might embrace as
to the correctness of their deductions, we are not at liberty

to re-examine the fact. Neither can it be admitted that the view we took of the former record, as to this point, is conclusive upon the present record.

In discussing this part of the case, the counsel for Mrs. White contended that the evidence adduced on the last trial, relating to the bonnet, had no tendency to place this item on any different footing from that which it occupied according to the first record in this court, and that the probable explanation of the transaction was, that, through inadvertence, the article was not charged when it was delivered to Mrs. White.

But, on the other side, it was claimed that the evidence adduced on the last trial, led to an inference, and tended to show, that Mrs. White first bought the bonnet of defendants in error, and paid them for it, and then returned it without recalling the purchase price, and that the circumstances, therefore, amounted to a re-sale of the article to them, and so gave rise to a proper item of account in her favor.

Now the evidence is not inconsistent with either of these theories, and an argument to the jury in support of either, would not have been impertinent or irrelevant. But the question here is, whether, in view of the evidence, and the charges given and requested, any ground of error is established by the record.

If Mrs. White first purchased the bonnet for cash, and it was then returned and accepted, and by mutual consent, express or implied, the defendants in error were allowed to retain the price she had paid, the transaction was a dealing between the parties by which she passed to them, and they received from her, the amount of the item; and I think it makes no difference upon this question, whether it is considered as having given rise to a credit to her for the money she paid, or a credit for the same sum, treated as the price of the bonnet, upon a re-sale by her to them·

25 MICH.—60.

In either case, it would constitute an item on the credit side of the account standing against her.

If, however, she received the bonnet from defendants in error, without paying for it, and they afterwards received it back, and the thing was done for mutual accommodation and convenience, and not by way of actual trade or barter, and the matter was thus consummated, it was a single transaction, which terminated without giving the right to either side to make it the matter of account, within the intent of the statute.

An attentive examination of the evidence has led me to think, that it would have admitted instructions according to these alternative hypotheses. But none was either given, or requested, according to the last. The request on this part of the case, for plaintiff in error, was inapplicable, and, as already stated, she preferred none whatever upon the second hypothesis just mentioned.

The charge given in response to the request of defendants in error was, in substance, agreeable to the first hypothesis, and as the verdict was in their favor, the jury should be presumed to have found it the true one. Under these circumstances, whatever might have been proper for the court below to have done on a motion for new trial, there appears to be no ground upon which this court, as one of review, and in the state of this record, can reverse the judgment in consequence of the want of an instruction adapted to that theory of the evidence for which plaintiff in error now contends, and in accordance with which no instruction was asked.

The remaining objection relates to the burden of proof on the issue involved, respecting Mrs. White's presence in the state.

The facts seems to have been, that on or before the 14th of November, 1867, she removed her residence from

WHITE v. CAMPBELL.

Detroit, where she had theretofore resided, to Canada; that during the year succeeding such removal she frequently visited Detroit on business, and called at the store of defendants in error; that in June, 1869, she returned to Detroit, and lived there three or four weeks, and then removed to Canada again.

It is now insisted, in her behalf, that since evidence was given for her, of her return to the state, the burden of proof was cast on the plaintiffs below, to prove the time of her absence from the state, or, in other words, the sum of the times of her presence here.

This view is inadmissible. It would violate the settled rules of pleading, and antagonize the course of decision on the subject. The established doctrine is, that where one seeks to make the statute available, he must prove all the facts essential to effectuate the bar. He is bound by the general rule, "that the obligation of proving any fact, lies upon the party who substantially asserts the affirmative of the issue." And Mrs. White in this matter affirmed, substantially, that, notwithstanding her residence abroad, she was present in the state, under such circumstances, and for such time or times, as to complete the bar she asserted in defense.—*Ford v. Babcock, 2 Sand., Sup. C. R., 518; Cole v. Jessup, 6 Seld. (10 N. Y.), 96.*

Upon the whole case, the result is, that the judgment should be affirmed, with costs.

The other Justices concurred.