437 F.2d 497
 In the Matter of LEE READY MIX & SUPPLY COMPANY, Inc., Bankrupt (two cases).
William H. DEMPSTER, Trustee in Bankruptcy, Appellant,
v.
WALLACE STONE COMPANY, etc., Appellee.
WALLACE STONE COMPANY, etc., Cross-Appellant,
v.
William H. DEMPSTER, Trustee in Bankruptcy, Cross-Appellee.
 No. 20515.
 No. 20516.
 United States Court of Appeals, Sixth Circuit.
 February 9, 1971.
 
 John T. Garey, Saginaw, Mich., for William H. Dempster; Janet E. Kinnane, Bay City, Mich., on brief.
 Leopold P. Borrello, Saginaw, Mich., for Wallace Stone Co.; Cook, Nash, Deiber & Borrello, Saginaw, Mich., on brief.
 Before EDWARDS and CELEBREZZE, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is an appeal and cross-appeal from a judgment of the United States District Court, Eastern District of Michigan, involving the validity of two Security Agreements made between the Wallace Stone Company and the now bankrupt Lee Ready Mix & Supply Company. The District Court ordered the Trustee of the Bankrupt to pay $10,063.00 to the Wallace Stone Company pursuant to a lien established by a valid Security Agreement dated February 25, 1964. Further, the District Court ordered the Trustee to pay $7,437.00 to the Bankrupt's estate in that a second Security Agreement, amending the first one, dated July 15, 1966, was held to be invalid and unenforceable. The Appellant-Trustee is appealing that part of the District Court order which validates the February, 1964 Security Agreement. The Appellee-Lienholder is cross-appealing that part of the District Court order which invalidates the July, 1966 Scurity Agreement.
 
 
 2
 The facts are undisputed. The Wallace Stone Company, a division of J. P. Burroughs & Son, Inc., was a major supplier of sand and gravel to the now bankrupt Lee Ready Mix & Supply Company. On February 25, 1964, with an outstanding debt on open account in excess of $30,000 due to the Wallace Stone Company, the Board of Directors of Lee Ready Mix authorized a Security Agreement with the Wallace Stone Company in response to a request by that Company for "some form of security * * * in order to assure Lee Ready Mix of a supply of sand and gravel to continue operations." The Security Agreement was executed on a printed form providing generally for a lien on certain assets for a stated account of a past due debt. However, where the printed form left blank a place for a description of the debt to be secured, the Wallace Stone Company typed in the following legend:
 
 
 3
 "This instrument is given for security of an open account in the amount above stated [$25,000] and any amount of said account which is over 90 days old shall bear interest at the rate of five (5%) per cent per annum, the total of said amount to be paid within three years from date hereof."
 
 
 4
 The Security Agreement was duly registered and filed according to the laws of the State of Michigan.
 
 
 5
 From February 25, 1964 through July 15, 1966, the Bankrupt continued to purchase supplies from the Wallace Stone Company and paid on open account to the Wallace Stone Company the total sum of $82,235.04. During that same period, however, the Bankrupt's total indebtedness on open account for material purchased from the Wallace Stone Company increased from over $30,000 to $53,907.89. After negotiations as to whether Wallace Stone would continue as a supplier of the Bankrupt and open up a new dock near the Bankrupt, the parties negotiated a second Security Agreement amending the amount of debt to be secured on open account from $25,000 to $30,000. This second Security Agreement, dated July 15, 1966 was executed by the President of the Bankrupt without authorization or ratification by the Board of Directors of Lee Ready Mix. Subsequent to this second Security Agreement the Bankrupt continued to purchase supplies from the Wallace Stone Company and paid $5,328.94 to the Wallace Stone Company prior to its filing for bankruptcy. On the date the Bankrupt filed its petition in bankruptcy, the Bankrupt owed the Appellee $50,082.87.
 
 
 6
 The Appellant contends that the first Security Agreement, dated February 25, 1964, was made to secure an existing debt to the extent of $25,000.00 and that the funds paid by the Bankrupt after February 25, 1964 and before its filing for bankruptcy discharged the stated secured debt of the February 25, 1964 Security Agreement. We do not agree.
 
 
 7
 The first Security Agreement authorized by the Wallace Stone Company was by its own terms intended to attach a lien on certain of the debtor's assets to secure a portion of the "open account" which existed between Wallace Stone and Lee Ready Mix. As the minutes of the Board of Directors of Lee Ready Mix reveal, the Board believed that if Lee Ready Mix did not provide security for their outstanding indebtedness which was in the form of an open unsecured account, the Wallace Stone Company might not continue to provide Lee Ready Mix with supplies of sand and gravel for future operations. Thus, not only did the express typewritten language of the Wallace Stone Company manifest an intention to secure a portion of an "open account" debt in order to maintain a continuing business relationship, but also the minutes of the Board of Directors of Lee Ready Mix reveal an intent to mortgage a revolving minimum sum of $25,000.00 on open account to secure the continuation of supplies to the financially distressed Lee Ready Mix & Supply Company.
 
 
 8
 Under Michigan law, a Security Agreement which purports to mortgage a corporation's assets will generally not be effective unless it is authorized by the Board of Directors of the debtor corporation. M.C.L.A. § 450.10(d) and (m) (1966). The By-laws of the Bankrupt do not expressly divest the Board of their statutory authority with regard to the mortgaging of corporate property. Therefore, the minutes of the Board of Directors which authorize the lien memorialized in the first Security Agreement are properly considered in determining the nature and scope of the parties' contractual relationship.
 
 
 9
 In Kaunitz v. Wheeler, 344 Mich. 181, 73 N.W.2d 263 (1955), the Supreme Court of Michigan held that whether the parties have converted the debt obligations of an open account into a settled balance of a stated account must depend on the facts. The Court then quoted with approval language from White v. Campbell, 25 Mich. 463, 468:
 
 
 10
 "That it [the conversion of an open account into a stated account] has taken place, may appear by evidence of an express understanding, or of words and acts, and the necessary and proper inferences from them." 73 N. W.2d at 265.
 
 
 11
 Upon a review of the record in the instant case, the course of dealing between the parties, the express language of the Security Agreement with particular reference to the typewritten language added to the printed Security Agreement form, and the minutes of the Board of Directors, we find that the parties intended to create a valid lien securing a revolving sum of $25,000.00 in an "open account." And in that there is nothing in Michigan law which requires us to ignore the express written intent of contracting parties because such a contract was made on a general form which may also be used to acknowledge a debt on a stated account, Kaunitz v. Wheeler, 344 Mich. 181, 73 N.W.2d 263, 265 (1955), we further find that the payments of the Bankrupt after February 25, 1964 which failed to reduce its open account liability to the Wallace Stone Company to less than $25,000.00 did not satisfy the valid continuing lien created pursuant to the first Security Agreement.
 
 
 12
 We turn now to the cross-appeal of the Wallace Stone Company. The Wallace Stone Company contends that the District Court should not have invalidated the second Security Agreement dated July 15, 1966. The basis of the District Court's holding invalidating the effectiveness of the second Security Agreement was that "it [the amended Security Agreement] was not [actually] authorized by the Bankrupt's Board of Directors." Further, there was no evidence of any other actual authorization or affirmation such as shareholder approval.
 
 
 13
 The Cross-Appellant concedes this finding to be factually true, but responds that it negotiated with the President of Lee Ready Mix who had implied and apparent authority to mortgage the assets of the Company. While under some circumstances a President of a corporation is vested with implied and apparent authority to execute a great number of ordinary business transactions without the express authorization of his Board of Directors, we believe that the mortgaging of a company's assets is not within his apparent or implied executive authority. Michigan law provides such power rests with a corporation's Board of Directors except where they have otherwise provided. M.C.L.A. § 450.10(d) and (m) (1966). The By-laws of the Lee Ready Mix & Supply Company do not expressly delegate the power to authorize the mortgaging of corporate assets to the President of that Company. Further, in the execution of the first Security Agreement, the Board met and expressly authorized that Agreement. Based on the record below, we find the District Court's order determining that the President of Lee Ready Mix & Supply Company did not have implied or apparent authority to negotiate and execute a valid Security Agreement without authorization from his Board of Directors is not in error.
 
 
 14
 The judgment of the District Court is affirmed. Each party to pay its own costs.