*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

LIPSON NIELSON, PC,

Plaintiff-Appellee,

v

KEVIN ADELL, ORVILLE PROPERTIES, LLC,
WORD NETWORK OPERATING COMPANY,
INC, RALPH LAMETI, CHURCH OF THE WORD,
and ADELL BROADCASTING CORPORATION,

Defendants-Appellants.

UNPUBLISHED
March 13, 2026
9:42 AM

No. 374175
Oakland Circuit Court
LC No. 23-202720-CB

Before: RIORDAN, P.J., and O'BRIEN and YOUNG, JJ.

PER CURIAM.

Defendant Kevin Adell and his company, defendant Orville Properties, LLC (collectively, "defendants"), hired plaintiff Lipson Neilson P.C. ("the Firm") to provide legal services. Defendants' contract with the Firm was for a single legal issue but after that issue was resolved, defendants presented other work projects to the Firm. Although the Firm never updated the written contract to reflect the new legal projects, defendants received detailed monthly invoices for all work performed and paid some invoices in full. Eventually defendants stopped paying, leaving a balance of $140,725.45. When the Firm demanded payment on the delinquent account and refused to accept new matters, defendants claimed that the total amount owed was excessive and terminated The Firm. The Firm initiated this suit to recover the outstanding balance, and the trial court granted summary disposition to the Firm, holding "there is no issue of material fact that summary disposition of Plaintiff's claims for Breach of Contract (Count I) and Account Stated (Count II) is warranted against Defendants []." Defendants now appeal that order, and we affirm.

## I.  FACTUAL AND PROCEDURAL HISTORY

### A.  DEFENDANTS RETAIN THE FIRM FOR THE NOVI ZONING MATTER

In May 2018, defendants retained the Firm to provide legal services for a zoning matter with the City of Novi.  The 2018 Retainer Agreement[1] specified payment terms, including billing on an hourly basis, with rates ranging from $185 to $450.  The 2018 Retainer Agreement specified that both Adell individually and Orville were "jointly and severally responsible for all attorney fee and cost invoices generated in connection to this retention."  It further outlined the scope of representation, stating:

> You have retained our firm to provide *legal consulting and advisory services* regarding the ongoing effort by you and Orville Properties, LLC to get final approval and rezoning for a commercial development project in the City of Novi, hereinafter referred to as "The Adell Center."  As you know, we have been acting as special counsel on your behalf and Orville Properties, LCC [sic] since early April of 2018 and this agreement will be deemed retroactive to that time frame.

> \*    \*    \*

> You have not authorized us to represent you in any actual lawsuit or to prepare one.  Such an undertaking would be through a new and distinct retainer understanding in the event you and your company were to ever choose that legal route.  Instead, we will continue to provide counsel and advisory services and act as a facilitator of communications with the City, as requested time to time by you and your company.

> If you wish to retain our law firm to act as litigation counsel in a future matter, we would of course be pleased and honored to be involved in such representation.  Our current representation, however, is limited to the matter as defined in this section and does not include any contemplated litigation. . . .

> \*    \*    \*

> . . . Any new retention regarding any new matter, including any possible or new litigation, will be the subject of a separate retainer agreement.

---

[1] After the 2018 Retainer Agreement was signed, Adell requested that all written communications regarding all aspects of representation be sent by email to Adell's authorized agent, defendant Ralph Lameti because Adell did not use email.  Lameti served as the Chief Financial Officer for Orville at all relevant times to this dispute.

Regarding payment, the 2018 Retainer Agreement required that defendants review each monthly statement immediately upon receipt and raise any questions at that time:

> [W]e request that upon receipt of each of our statements, you review the statements at that time to determine if you have any questions or comments regarding them. If so, please call us. If not, it is our expectation that each statement will be paid in full no later than 30 days after the date of the statement.

The Firm completed the Novi zoning matter and defendants paid those invoices in full.

## B. THE FIRM REPRESENTS DEFENDANTS IN FIVE ADDITIONAL MATTERS

On February 10, 2020, the terms of the 2018 Retainer Agreement were allegedly extended by mutual oral agreement between defendants and the Firm, as defendants sought the Firm's representation in a new case involving a construction lien (the "GreenTech" matter). As to the GreenTech matter specifically, defendants also later confirmed in writing their agreement to pay in a September 21, 2020 letter signed by Adell, agreeing to pay the Firm's "costs and expenses" in the GreenTech matter. From February 2020 through January 2021, defendants requested that the Firm provide legal services on GreenTech, as well as four additional matters, again allegedly extending the terms of the 2018 Retainer Agreement to each case.

Adell's agent and acting CFO of Orville, Ralph Lameti, was responsible for reviewing and paying invoices, including those received by the Firm, subject to Adell's approval. The Firm began issuing invoices for the five additional matters and did not receive any objections from defendants. Defendants made fourteen partial payments on various invoices for these additional matters, totaling more than $100,000.[2] The total remaining unpaid balance is $140,725.45.

## C. BILLING DISPUTE AND TERMINATION OF THE FIRM

On December 28, 2020, Seltzer emailed Lameti notifying him that over $50,000 in unpaid invoices were more than 90 days old. Without receiving any response, on February 10, 2021, Seltzer emailed Lameti again stating that the 90 day and older balance was now over $74,000. Seltzer reminded Lameti that, "as you know, all invoices are payable upon receipt and not more than 30 days thereafter" and stated that the Firm would "have to consider withdrawing from all current legal matters" if payment was not received. Again, there was no response. On February 22, 2021, Lameti emailed the Firm for a status update in one of the matters. Jeffrey Frank, a

---

[2] The payment history shows:
- Matter #1 (Novi Zoning): $32,250.00 paid in full;
- Matter #2 (GreenTech): $55,606.50 paid; $105,664.20 remains unpaid;
- Matter #5 (Quenton Ross): $14,115.00 paid; $24,740 remains unpaid;
- Matters #7, #8, #9: No payments made; $10,321.25 total remains unpaid.

The vast majority of the unpaid balance is owed on just two matters where defendants already made substantial payments: GreenTech and Quenton Ross.

partner at the Firm, responded that the Firm would not commence "any new matters for Orville Properties/Word Network until the Accounts Receivables were addressed."

On March 1, 2021, defendants for the first time questioned the outstanding amount of fees owed to the Firm for one case. Specifically, Lameti stated in an email to Firm partner, Philip Seltzer, "[Adell] wants an explanation of why the Greentech balance after many payments is $96,284.20. The whole case is not worth that kind of charge." On March 11, defendants advised the Firm that they were terminating their representation. By the time all the matters were transferred to substitute counsel, the total amount owed to the Firm across all matters totaled $140,725.45.

## D. THE FIRM SUES DEFENDANTS TO RECOVER OUTSTANDING FEES

The Firm filed the instant suit in September 2023 to collect unpaid fees from defendants, asserting claims for Account Stated (Count I) and Breach of Contract (Count II). The court entered a scheduling order on March 8, 2024, setting forth various deadlines, including that "[a]ll dispositive motions shall be filed no later than 8/30/24." In accordance with the scheduling order, on August 30, 2024, the Firm moved for summary disposition, under MCR 2.116(C)(10) and MCR 2.116(C)(9), seeking judgment on its breach of contract and account stated claims.

On September 4, 2024, the trial court issued a summary disposition scheduling order, instructing defendants to file their response to the Firm's motion "by December 4, 2024 by 11:59 p.m." The scheduling order further provided:

> PLEASE BE ADVISED THE COURT WILL STRICTLY ENFORCE MCR 2.119(A)(2). If briefs are not timely filed, the Court SHALL assume that the party, whether or not represented by counsel, does not have any authority for his/her/its position(s). Failure to timely file briefs also will result in that party's waiver of oral argument.

The order also specified:

> Should adjournment be desired, such a request must be made by motion demonstrating good cause absent an order of adjournment by the Court. If you have any questions, please contact the judicial staff attorney at 248-897-8961 (any voicemail messages are checked regularly).

Defendants did not file any response by the December 4, 2024 deadline. Defendants attribute their inability to timely file their response to two issues that occurred on December 4: (1) counsel's car was hit by a utility truck, and (2) counsel's sole paralegal suffered an acute medical issue that substantially interfered with finalizing and filing defendants' response. Defendants attempted to file their response the next day, on December 5, 2024, at 3:50 p.m., but the trial court rejected this filing as untimely. On December 11, defendants filed a motion to adjourn the briefing deadline by one day, explaining the events of December 4 that prevented their timely filing of a motion for summary disposition. The trial court scheduled a hearing on the motion to adjourn for January 2025.

E.  MOTION FOR SUMMARY DISPOSITION AND MOTION TO ADJOURN DECIDED

Two days later, on December 13, the trial court issued its opinion and order granting the Firm's motion for summary disposition under MCR 2.116(C)(10).  The opinion specified two "independent reasons" for the trial court ruling; first, defendants' failure to timely submit any responsive brief, and second, the evidence established breach of contract and account stated as a matter of law.  Defendants moved for reconsideration, which was denied.

On January 8, 2025, the trial court issued an order and opinion denying defendants' motion to adjourn.  The court concluded there was no good cause to support adjournment because defendants should have filed the motion "at least before December 10, 2024" and because it found counsel's excuse for the delay contrary to the commentary to Michigan Rule of Professional Conduct 1.1, which provides: "[t]o maintain the requisite knowledge and skill, a lawyer should engage in continuing study and education, including the knowledge and skills regarding existing and developing technology that are reasonably necessary to provide competent representation for the client in a particular manner."  Thus, according to the trial court, defendants' counsel's "failure to timely file the response and to be competent in technology are self-inflicted wounds[.]"  Final judgment was entered against defendants on January 9, 2025.  This appeal followed.

II.  ANALYSIS

A.  SUMMARY DISPOSITION

Defendants argue that the trial court abused its discretion when it granted the Firm's motion for summary disposition because issues of fact remain as to liability and damages.  We disagree.

1.  STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition.  *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019).  Under MCR 2.116(C)(10), summary disposition is appropriate "if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law."  *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018) (quotation marks and citation omitted).  "Because a motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint, the circuit court must consider the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion."  *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012).

"A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds could differ."  *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).  "Courts are liberal in finding a factual dispute sufficient to withstand summary disposition."  *Patrick*, 322 Mich App at 605 (quotation marks and citation omitted).  A court may not "make findings of fact; if the evidence before it is conflicting, summary disposition is improper."  *Id*. at 605-606 (quotation marks and citation omitted).

-5-

## 2. THE TRIAL COURT DID NOT ERR IN GRANTING PARTIAL SUMMARY DISPOSITION TO THE FIRM

Because defendants did not timely respond to the Firm's motion for summary disposition,[3] the trial court recognized that judgment for the Firm could be appropriate on this ground alone. This is in keeping with MCR 2.116(G)(4) (emphasis added), which provides:

> an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial. *If the adverse party does not so respond, judgment, if appropriate, shall be entered.*

This rule expressly authorizes a trial court to enter judgment against a nonresponding party, without giving additional chances to that party, when a (C)(10) motion is properly supported.

Our caselaw confirms the same. In *Cleveland v Hath*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 363321); slip op at 7, this Court affirmed the trial court's award of summary disposition to defendants where the plaintiff failed to timely file a response to defendants' motion for summary disposition in violation of the trial court's scheduling order. Relying on *EDI Holdings, LLC v Lear Corp*, 469 Mich 1021, 678 NW2d 440 (2004),[4] this Court concluded that "a trial court did not abuse its discretion by enforcing a scheduling order even though that resulted in summary disposition for the moving party because the opposing party failed to file a timely response." *Id*. at 5. *Cleveland* went on to explain:

> Where, as here, the opposing party "fails to present" any evidence, "the motion is properly granted" because no genuine issue of material fact exists . . . . Here, [the] defendants' summary disposition motions presented viable arguments and did not offer evidence that gave rise to a genuine issue of material fact. Therefore, [the] defendants' motions shifted the burden to [the] plaintiff to present evidence to establish a genuine issue of material fact. By neglecting to submit timely responses

---

[3] Defendants allege that the trial court disparately enforced the scheduling order and abused its discretion by failing to grant the motion to adjourn. Neither claim has merit. First, there is no evidence that the trial court disparately enforced the scheduling order. The Firm filing an errata sheet to correct citations after timely filing their substantive pleading is distinct from untimely filing a substantive pleading. Second, while we may not invoke the MRPC when it comes to waiting to the final due date to file, or in relying on one's paralegal, we also do not find it to be outside of the realm of reasonable outcomes to conclude that the unfortunate circumstances defendants found themselves in do not amount to good cause.

[4] *EDI Holdings* likewise involves a defendant that failed to timely file a brief in response to plaintiff's motion for summary disposition in violation of the scheduling order. The trial court awarded summary disposition to plaintiff against defendant, which this Court reversed, finding an abuse of discretion. The Michigan Supreme Court reversed this Court and reinstated the trial court's summary disposition order, holding that this Court "clearly erred in finding that the Oakland Circuit Court abused its discretion when it enforced the summary disposition order." *Id*.

to the motions, the plaintiff failed to carry that burden, so the trial court properly awarded relief to [the] defendants under MCR 2.116(C)(10). [*Cleveland*, ___ Mich App at ___; slip op at 5.]

This Court in *Cleveland* also emphasized the cautionary language in the trial court's scheduling order that set forth consequences of failing to file timely responses, which stated, "If you do not submit a timely brief, the Court will assume that there is no legal or factual support for your position." *Id*. Thus, we find the trial court here was entitled to consider plaintiff's motion for summary disposition without having any response from defendants.

Further, we agree with the trial court that plaintiff established both claims of breach of contract and account stated as a matter of law, and thus, summary disposition was appropriate on the merits. To prevail on a breach of contract claim, the Firm only needed to show "by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller- Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014). "In interpreting a contract, it is a court's obligation to determine the intent of the parties by examining the language of the contract according to its plain and ordinary meaning." *In re Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008). "The practical interpretation given to contracts by the parties to them, while engaged in their performance and before any controversy has arisen concerning them, is one of the best indications of their true intent." *Klapp v United Ins Group Agency, Inc*, 458 Mich 459, 479; 663 NW2d 447 (2003) (citations omitted). "[T]he express terms of an agreement and any applicable course of performance, course of dealing, or usage of trade must be construed whenever reasonable as consistent with each other." *MSSC, Inc v Airboss Flexible Prods Co*, 511 Mich 176, 203 n 3; 999 NW2d 335 (2023).

Here, the parties do not dispute the existence of the original contract: the 2018 Retainer Agreement. The instant dispute focuses on whether that contract was extended to the additional matters, despite not having writing to confirm the same. The record establishes that (1) the parties entered into the 2018 Retainer Agreement; (2) an agreement was made in February 2020 extending the terms to additional matters;[5] (3) a September 2020 agreement was entered into by the parties regarding the GreenTech matter; and (4) the parties course of performance for several years was

---

[5] Defendants argue that there was no mutual agreement in February 2020 to extend the terms of the contract. Defendants abandoned that argument on appeal by failing to properly raise it in the trial court. See *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008) ("[A] party may not remain silent in the trial court, only to prevail on an issue that was not called to the trial court's attention."). Further, that argument fails on the merits. The only evidence that defendants rely on is Adell's deposition testimony, where in response to asking if the terms were extended during a conversation with the Firm, Adell first answered, "[n]o, I did not" but then stated, "I don't recall. I don't remember." This deposition testimony, particularly when paired with the history of payments made without complaint or concern, is insufficient to create a question of fact here. *Bakeman v Citizens Ins Co of the Midwest*, 344 Mich App 66, 80; 998 NW2d 743, 750 (2022) (no genuine issue of material fact precluded summary disposition where self-contradictory deposition testimony conflicted with documented evidence).

consistent in that the Firm continued to perform legal work for defendants and defendants continued to make payments with no objections until March 1, 2021.

Michigan contract law understands that the word " '[a]greement' means the bargain of the parties in fact as found in their language *or by implication from other circumstances including course of dealing or usage of trade . . . .*" *Roan v Murray*, 219 Mich App 562, 566; 556 NW2d 893 (1996) (emphasis added; citation omitted). The law thus does not require that parties in these circumstances here enter into separate written agreements for each new matter; an oral retainer agreement can be established by the course of dealing or course of performance between the contracting parties. See *H J Tucker & Associates, Inc v Allied Chucker & Engineering Co*, 234 Mich App 550, 567; 595 NW2d 176 (1999), citing *State Bank of Standish v Curry*, 442 Mich 76, 86; 500 NW2d 104 (1993). "Where parties by such a uniform course of conduct for a long time have given a contract a particular construction, that construction will be adopted by the courts." *Klapp*, 458 Mich at 479.

The course of performance here is well established and weighs against defendants. Defendants specifically received dozens of itemized invoices for services at the rate set forth in the original 2018 Retainer Agreement, without objection. They made fourteen partial payments totaling over $100,000, with no objections to the quality of work or rate being charged and continued to request and receive legal services regularly for years. It was not until the Firm asked defendants about outstanding payments on the GreenTech matter in February 2021 that defendants then, in March, questioned the fees being charged and ultimately terminated representation. Defendants failed to timely present evidence that established a genuine issue of material fact as to this claim, and thus, we find no error in the trial court's decision.

Moving to the Firm's account stated claim, we too agree with the trial court's decision to grant summary disposition on the merits. In a factually similar attorney fee dispute case, *Dunn v Bennett*, 303 Mich App 767, 771; 846 NW2d 74 (2013), this Court confirmed that an account stated claim is an independent cause of action that is established when: (1) parties have prior transactions, (2) an agreement on the balance due, and (3) a promise to pay that balance. "An 'account stated' refers to a 'contract based on assent to an agreed balance,' which, like all contracts, must be created through mutual assent." *Id*. at 770 (citation omitted). "An express contract arises when the parties expressly agree to the sum due." *Id*. at 771 (citation omitted). "A party's acceptance may also be inferred when the party makes payments on the amount due or receives an accounting and fails to object within a reasonable time." *Id*. (citations omitted).

The same facts that render summary disposition appropriate on the breach of contract claim apply here. The Firm provided documentary evidence via itemized invoices and email exchanges that showed the work being performed and the related costs and fees. Defendants' acceptance may be inferred here on the basis of the fourteen partial payments they made to the Firm without objecting within a reasonable time, i.e. the 30-day window set forth by the 2018 Retainer Agreement. See e.g., *Corey v Jaroch*, 229 Mich 313, 315; 200 NW 957 (1924); *Pabst Brewing Co v Lueders*, 107 Mich 41, 48; 64 NW 872 (1895); *White v Campbell*, 25 Mich 463, 468 (1872); *Keywell & Rosenfeld v Bithell*, 254 Mich App 300, 331; 657 NW2d 759 (2002). Defendants failed

to timely dispute this evidence and failed to show any genuine issue of material fact as to this claim.  We find summary disposition was properly granted to the Firm on the account stated claim.

Affirmed.

/s/ Michael J. Riordan
/s/ Colleen A. O'Brien
/s/ Adrienne N. Young